******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# LPP MORTGAGE LTD. *v.* UNDERWOOD TOWERS LIMITED PARTNERSHIP ET AL.
## (SC 21237)

Mullins, C. J., and McDonald, D'Auria, Ecker,
Dannehy and Bright, Js.

*Syllabus*

The substitute plaintiff, L Co., sought to foreclose a mortgage on certain commercial property leased by the named defendant, U Co., from the defendant city of Hartford. After U Co. defaulted, it executed a second mortgage and promissory note. Following a further default, U Co. executed another note and agreed to certain modifications to the second mortgage. When the second mortgage and both notes were thereafter sold to L Co., L Co. was provided with a lost note affidavit in which the seller averred that the last note had been lost. In L Co.'s action seeking foreclosure and damages, U Co. and the defendant C Co., U Co.'s management agent, filed a motion to dismiss, claiming that L Co. lacked standing to pursue foreclose under the Uniform Commercial Code (UCC) (§§ 42a-3-301 and 42a-3-309) insofar as L Co. did not possess the lost note when it was lost. The trial court denied the motion to dismiss, concluding that, pursuant to *New England Savings Bank* v. *Bedford Realty Corp.* (238 Conn. 745), L Co. had standing to foreclose the mortgage, so long as there was evidence establishing L Co.'s ownership of the debt underlying the note. The trial court subsequently rendered a judgment of strict foreclosure and awarded damages to L Co. U Co. and C Co. appealed to the Appellate Court, claiming that the trial court had incorrectly determined that L Co. had standing. The Appellate Court concluded that, even though L Co. was not in possession of the lost note when it was lost and, therefore, could not enforce the note under the UCC, it nevertheless had standing to pursue the equitable remedy of foreclosure as the owner of the debt. The Appellate Court thus affirmed the trial court's judgment and remanded the case for the purpose of setting new law days. On remand, the trial court opened its previous judgment of strict foreclosure for the purposes of setting new law days and to consider L Co.'s motion for attorney's fees, and U Co. and C Co. filed new motions to dismiss, again asserting that L Co. lacked standing to foreclose the mortgage. They claimed that they were entitled to relitigate the issue of standing because, after the disposition of their appeal before the Appellate Court, this court overruled *Bedford Realty Corp.* sub silentio in *Bank of New York Mellon* v. *Tope* (345 Conn. 662) and changed the law of standing by holding that a plaintiff's standing to foreclose a mortgage is dependent on its right to enforce the promissory note under the UCC at the time it commenced the foreclosure action. In denying these new motions to dismiss, the trial court concluded that the law governing standing under these circumstances had not changed and rejected U Co. and C Co.'s claim concerning L Co.'s standing based on, inter alia, the doctrine of res judicata. The trial court then rendered a judgment of strict foreclosure, from which U Co. and C Co. appealed, contending that the trial court had improperly denied their motions to dismiss. *Held*:

This court concluded that the trial court had properly denied U Co.'s and C Co.'s motions to dismiss, as the doctrine of res judicata barred them from relitigating their claim regarding L Co.'s standing to pursue foreclosure.

U Co. and C Co. previously had the opportunity to litigate their claim that L Co. lacked standing to pursue foreclosure on the ground that it could not enforce the lost note under the UCC, that claim was squarely before the Appellate Court in their prior appeal, and that court expressly considered and rejected that claim.

Moreover, this court rejected U Co. and C Co.'s contention that they were nevertheless entitled to review of their standing claim by the trial court on remand on the ground that this court, in *Tope*, had changed the law governing that claim after the Appellate Court decided U Co. and C Co.'s appeal in L Co.'s favor.

Specifically, this court rejected U Co. and C Co.'s contention that *Tope* had overruled *Bedford Realty Corp.* sub silentio, as the underlying facts in *Tope* did not implicate the principles set forth in *Bedford Realty Corp.*, and there was nothing in this court's decision in *Tope* that was inconsistent with its decision in *Bedford Realty Corp.* or that otherwise indicated that *Bedford Realty Corp.* was no longer controlling precedent.

Furthermore, this court rejected U Co. and C Co.'s contention that the doctrine of res judicata was inapplicable because there was no longer an existing final judgment after the trial court, on remand, opened the judgment of strict foreclosure.

The trial court opened the judgment of strict foreclosure for the limited purposes of setting new law days and considering an award of attorney's fees, the judgment thus was not opened in its entirety, and, accordingly, that judgment remained final in the res judicata sense as to the issue of L Co.'s standing to pursue foreclosure.

Argued May 13—officially released August 11, 2026

*Procedural History*

Action to foreclose a mortgage on certain real property owned by the defendant city of Hartford in which the named defendant held a leasehold interest, and for other relief, brought to the Superior Court in the judicial district of Hartford and transferred to the Complex Litigation Docket; thereafter, LPP Mortgage, Inc., was substituted as the plaintiff; subsequently, the court, *Schuman, J.*, denied the motion to dismiss filed by the named defendant et al.; thereafter, the case was tried to the court, *Schuman, J.*; judgment of strict foreclosure, from which the named defendant et al. appealed to the

Appellate Court, *Cradle*, *Alexander* and *Lavine*, *Js*., which affirmed the trial court's judgment and remanded the case for the purpose of setting new law days; subsequently, on remand, the court, *Farley*, *J.*, granted the substitute plaintiff's motion to open and denied the named defendant's motion to cure the defaults underlying the judgment of foreclosure and to reinstate the mortgage; thereafter, the court, *Farley*, *J.*, denied the motions to dismiss filed by the named defendant et al. and granted the substitute plaintiff's motion for attorney's fees; subsequently, the court, *Farley*, *J.*, rendered judgment of strict foreclosure, from which the named defendant et al. appealed. *Affirmed.*

*Richard P. Weinstein*, with whom, on the brief, was *Sarah Black Lingenheld*, for the appellants (named defendant et al.).

*Michael S. Taylor*, with whom were *Brendon P. Levesque* and, on the brief, *Nicholas P. Vegliante*, *J. David Folds*, pro hac vice, and *John G. McJunkin*, pro hac vice, for the appellee (substitute plaintiff).

*Opinion*

MULLINS, C. J. This commercial foreclosure action has been litigated for nearly two decades. In the present appeal, the defendants Underwood Towers Limited Partnership (Underwood) and its management agent, CDC Management Corporation (CDC),[1] appeal from the trial court's judgment of strict foreclosure rendered in favor of the substitute plaintiff, LPP Mortgage, Inc.[2] This appeal concerns the defendants' second attempt

---

[1] The city of Hartford, Greystone Servicing Corporation, Inc., MacGray Services, Inc., United Way of the Capital Area, Inc., and Xerox-Hartford Associates also were named as defendants. For convenience, we refer to Underwood and CDC as the defendants.

[2] LPP Mortgage Ltd. commenced this foreclosure action in 2006. Thereafter, LPP Mortgage, Inc., was substituted as the plaintiff. Accordingly, for convenience, we refer to the substitute plaintiff as the plaintiff throughout this opinion.

to challenge the plaintiff's standing to foreclose the mortgage.[3]

In a prior appeal, the defendants argued that the plaintiff lacked standing to pursue foreclosure because it was not in possession of the note and, therefore, was not a party entitled to foreclose the mortgage. See *LPP Mortgage Ltd.* v. *Underwood Towers Ltd. Partnership*, 205 Conn. App. 763, 765, 769, 260 A.3d 521, cert. denied, 339 Conn. 905, 260 A.3d 1226 (2021), and cert. denied, 339 Conn. 906, 260 A.3d 483 (2021), and cert. denied, 339 Conn. 906, 260 A.3d 1225 (2021). The Appellate Court concluded that, even though the plaintiff was not in possession of the original note at the time it was lost and, thus, was not entitled to enforce the note under the Uniform Commercial Code (UCC), General Statutes § 42a-1-101 et seq., it nevertheless had standing to pursue the equitable remedy of foreclosure as the owner of the debt. See id., 768–72. The Appellate Court affirmed the trial court's judgment, upheld the trial court's denial of the defendants' motion to dismiss for lack of standing, and remanded the case for the purpose of setting new law days. See id., 772.

On remand, the defendants filed new motions to dismiss, again asserting that the plaintiff lacked standing to foreclose the mortgage. They claimed that they were entitled to relitigate the issue of standing because, after the disposition of their prior appeal, this court changed the governing law of standing in *Bank of New York Mellon* v. *Tope*, 345 Conn. 662, 286 A.3d 891 (2022). The trial court considered this claim, concluded that the governing law had not changed, rejected the claim based on res judicata and the law of the case doctrine, and denied the defendants' motions to dismiss. The trial court then rendered a judgment of strict foreclosure. The defendants appealed to the Appellate Court, and we

---

[3]The defendant city of Hartford also filed a separate appeal, which we also decide today. See *LPP Mortgage Ltd.* v. *Underwood Towers Ltd. Partnership*, 355 Conn. 334,    A.3d    (2026).

transferred the appeal to this court. See General Statutes § 51-199 (c); Practice Book § 65-2.

In the present appeal, the defendants renew their argument that, because of the intervening decision in *Tope*, they were not precluded from relitigating their standing claim after the Appellate Court rejected that claim and remanded the case. We disagree and conclude that *Tope* did not change the governing law and that the trial court therefore correctly determined that the defendant's standing claim was precluded as a matter of law. Accordingly, we affirm the judgment of the trial court.

We begin by setting forth the undisputed facts and procedural history relevant to our analysis.[4] In 1985, Underwood leased land from the city of Hartford (city) to construct two high-rise apartment buildings known as Park Place Towers. To finance the project, Underwood obtained from The Connecticut National Bank a $35 million mortgage loan, which was insured by the United States Department of Housing and Urban Development (HUD). In 1990, after Underwood defaulted, it executed a second mortgage and a second note, "Note A," in favor of HUD. Following another default on the first mortgage, in 1996, Underwood executed an additional note with HUD, "Note B," and agreed to certain modifications to the second mortgage.

After several transfers between HUD and other entities, the plaintiff purchased the second mortgage, Note A, and Note B in January 2006. The plaintiff did not obtain possession of the original Note B but received a

---

[4]For a more detailed recitation of the facts underlying this case, see the trial court's 2019 memorandum of decision, which was adopted by the Appellate Court. *LPP Mortgage Ltd.* v. *Underwood Towers Ltd. Partnership*, supra, 205 Conn. App. 768; see *LPP Mortgage Ltd*. v. *Underwood Towers Ltd. Partnership*, Superior Court, judicial district of Hartford, Complex Litigation Docket, Docket No. X03-CV-07-5007994-S (July 16, 2019) (reprinted at 205 Conn. App. 773, 775–79, 260 A.3d 532), aff'd, 205 Conn. App. 763, 260 A.3d 521, cert. denied, 339 Conn. 905, 260 A.3d 1226 (2021), and cert. denied, 339 Conn. 906, 260 A.3d 483 (2021), and cert. denied, 339 Conn. 906, 260 A.3d 1225 (2021).

lost note affidavit in which the seller averred that Note B had previously been lost.

In December 2006, the plaintiff commenced this action to foreclose the second mortgage. The plaintiff also sought other relief. More specifically, in its operative complaint, the plaintiff included nine counts that were based on, inter alia, alleged noncompliance with certain requirements outlined in, or breach of duties stemming from, the loan documents and, in those counts, sought damages from Underwood, CDC, or both. The city, among others, was also named as a defendant in the action.[5]

In a motion to dismiss filed in April 2019, the defendants challenged the plaintiff's standing to pursue foreclosure. The defendants argued that the plaintiff could not foreclose the mortgage because it was not a party entitled to enforce Note B under the UCC. Specifically, the defendants contended that, based on the undisputed facts, the plaintiff could not satisfy General Statutes §§42a-3-301 and 42a-3-309,[6] which require the party seeking to enforce a lost note to show that it had possession of the note at the time of loss. The defendants further asserted that their argument that the UCC governed standing to foreclose was consistent with General Statutes §42a-3-310 (b) (4).[7]

---

[5]For a list of the other defendants, see footnote 1 of this opinion.

[6]General Statutes §42a-3-301 provides in relevant part: " 'Person entitled to enforce' an instrument means (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to section 42a-3-309 or 42a-3-418 (d). . . ."

General Statutes §42a-3-309, in turn, provides in relevant part: "(a) A person not in possession of an instrument is entitled to enforce the instrument if (i) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred, (ii) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process. . . ."

[7]General Statutes §42a-3-310 (b) (4) provides: "If the person entitled to enforce the instrument taken for an obligation is a person other than

They construed that provision as preventing the plaintiff from enforcing the "amount payable on the instrument" that has been lost, which, in the present case, would be the debt underlying Note B.

The trial court denied the motion to dismiss in July 2019. In its memorandum of decision, the trial court explained that it relied on this court's decision in *New England Savings Bank* v. *Bedford Realty Corp.*, 238 Conn. 745, 680 A.2d 301 (1996) (*Bedford Realty*), in which we concluded that, "whatever restrictions §§ 42a-3-301 and 42a-3-309 might put [on] the enforcement of personal liability based solely [on] a lost note, they do not prohibit [the plaintiff] from pursuing an action of foreclosure to enforce the terms of the mortgage." Id., 760. The trial court further reasoned that § 42a-3-310 (b) (4) was inapplicable, as that "provision expressly applies only to a 'person entitled to enforce the instrument,' a category that would exclude the plaintiff in the first place under § 42a-3-309 because it never had possession of the lost note." Because the plaintiff had proven "a complete chain of title for its ownership of the debt underlying Note B," the trial court concluded that the plaintiff had established its standing to foreclose consistent with *Bedford Realty*.

The trial court also found that the plaintiff was entitled to a judgment of strict foreclosure.[8] In addition, the court found that Underwood was liable for $1,766,057 in damages for breach of contract, breach of the covenant of good faith and fair dealing, and conversion, and that CDC was liable for $408,588 in damages for unjust enrichment. In October 2019, the trial court rendered a judgment of strict foreclosure and issued an

the obligee, the obligee may not enforce the obligation to the extent the obligation is suspended. If the obligee is the person entitled to enforce the instrument but no longer has possession of it because it was lost, stolen, or destroyed, the obligation may not be enforced to the extent of the amount payable on the instrument, and to that extent the obligee's rights against the obligor are limited to enforcement of the instrument."

[8]The foreclosure of mortgage count was against all of the defendants; see footnote 1 of this opinion and accompanying text; except for CDC.

order supplementing its prior findings on the breach of contract, conversion, and unjust enrichment counts. The defendants and the city subsequently filed separate appeals with the Appellate Court.

In the defendants' appeal, they claimed, inter alia, that the trial court erred in concluding that the plaintiff had standing to pursue foreclosure despite the plaintiff's inability to enforce the note under the UCC. See *LPP Mortgage Ltd.* v. *Underwood Towers Ltd. Partnership*, supra, 205 Conn. App. 765, 768. After noting that the trial "court's memorandum of decision aptly addresse[d] the arguments raised by [the defendants]" on appeal, the Appellate Court summarily rejected those arguments and adopted the trial court's memorandum of decision in lieu of "repeat[ing] the discussion contained therein." Id., 768.

In its appeal to the Appellate Court, the city raised an additional argument that had not been raised before the trial court. See id., 768–72. Specifically, the city claimed that *Bedford Realty*, the case on which the trial court relied in finding that the plaintiff had standing, had been overruled sub silentio by two subsequent decisions issued by this court, namely, *J.E. Robert Co.* v. *Signature Properties, LLC*, 309 Conn. 307, 71 A.3d 492 (2013), and *Equity One, Inc.* v. *Shivers*, 310 Conn. 119, 74 A.3d 1225 (2013). See *LPP Mortgage Ltd.* v. *Underwood Towers Ltd. Partnership*, supra, 205 Conn. App. 769–71. The Appellate Court rejected that argument as well. See id., 769, 772. In doing so, the Appellate Court reasoned that neither *J.E. Robert Co.* nor *Equity One, Inc.*, mentioned *Bedford Realty* or "discusse[d] the dichotomy between a foreclosure action and an action to enforce a note" that this court relied on in deciding *Bedford Realty*. Id., 771–72. Therefore, the Appellate Court declined to presume that this court had "overrule[d] its long-standing precedent in [that case] . . . ."[9] Id., 772. The

[9] In the alternative, the city argued that *Bedford Realty* was wrongly decided. *LPP Mortgage Ltd.* v. *Underwood Towers Ltd. Partnership*, supra, 205 Conn. App. 769, 772. The Appellate Court declined to address

Appellate Court thus affirmed the trial court's judgment and remanded the case to the trial court for the purpose of setting new law days.[10] Id.

On remand, the trial court granted the plaintiff's motion to open the judgment of strict foreclosure for the purposes of setting new law days and considering an award of attorney's fees. Before the court decided the plaintiff's motion for attorney's fees, however, the defendants filed separate motions to dismiss the case for lack of standing. Underwood claimed in its motion that, after the defendants' first appeal, this court's decision in *Bank of New York Mellon* v. *Tope*, supra, 345 Conn. 662, overruled *Bedford Realty* sub silentio and changed the relevant legal landscape by holding that a plaintiff's standing to foreclose a mortgage is dependent on its right to enforce the promissory note under the UCC at the time it commenced the foreclosure action. Underwood argued that, in the present case, because the plaintiff could not enforce Note B under the UCC, it did not have standing to foreclose the mortgage securing the debt evidenced by that note. In its motion to dismiss, CDC reiterated the same standing argument raised by Underwood and further contended that, if the plaintiff could not foreclose the mortgage, it also could not enforce its covenants against CDC in the nonforeclosure counts.

After briefing and oral argument, the trial court denied the defendants' motions to dismiss. In its memorandum of decision, the trial court explained that, under the doctrines of res judicata and the law of the case, "the prior

the merits of that argument, reasoning that it could not overrule or reconsider a decision of this court. See id., 772.

[10]Subsequently, Underwood, CDC, and the city each separately filed a petition for certification to appeal to this court, claiming, inter alia, that the Appellate Court had improperly rejected their respective arguments regarding the plaintiff's standing. On October 12, 2021, this court denied the petitions for certification to appeal. See *LPP Mortgage Ltd.* v. *Underwood Towers Ltd. Partnership*, 339 Conn. 906, 260 A.3d 1225 (2021); *LPP Mortgage Ltd.* v. *Underwood Towers Ltd. Partnership*, 339 Conn. 906, 260 A.3d 483 (2021); *LPP Mortgage Ltd.* v. *Underwood Towers Ltd. Partnership*, 339 Conn. 905, 260 A.3d 1226 (2021). Thus, the case returned to the trial court to set new law days.

litigation of the standing issue at both the trial [court] and Appellate Court levels" would ordinarily preclude the defendants' efforts to relitigate the issue. Nonetheless, the trial court noted that the Appellate Court released its decision prior to our decision in *Tope*, and, thus, it reasoned that, if *Tope* did in fact institute a change in the governing law, as the defendants contended, then it would be required to address the merits of the standing argument. Following a thorough analysis of *Tope*, however, the trial court determined that *Bedford Realty* had not been overruled sub silentio, and, therefore, the Appellate Court's prior decision precluded the defendants from renewing their arguments challenging the plaintiff's standing.

After granting the plaintiff's motion for attorney's fees, the trial court again rendered a judgment of strict foreclosure on March 7, 2025, and set the law days to begin on April 1, 2025. The defendants appealed to the Appellate Court, and we granted their motion to transfer the appeal to this court.

On appeal, the defendants again argue that the plaintiff—not being a party entitled to enforce Note B under the UCC—lacked standing to foreclose the mortgage and assert that the entire action, including all nonforeclosure counts, should therefore be dismissed. In so arguing, the defendants claim that the trial court erroneously denied their motions to dismiss under the doctrines of res judicata and the law of the case. In response, the plaintiff asserts, inter alia, that the trial court properly denied the defendants' motions. We agree with the plaintiff that the trial court properly applied the doctrine of res judicata to the defendants' standing claim, and we therefore focus our analysis solely on the applicability of that doctrine.

Whether the doctrine of res judicata bars the defendants' claim that the plaintiff did not have standing to pursue foreclosure is a question of law over which our review is plenary. See, e.g., *Solon* v. *Slater*, 345 Conn. 794, 809, 287 A.3d 574 (2023). "The doctrine of res judicata provides that [a] valid, final judgment rendered

on the merits by a court of competent jurisdiction is an absolute bar to a subsequent action between the same parties . . . [on] the same claim or demand." (Internal quotation marks omitted.) *Independent Party of CT— State Central* v. *Merrill*, 330 Conn. 681, 712–13, 200 A.3d 1118 (2019).

In short, the doctrine of "res judicata . . . [is] based on the public policy that a party should not be able to relitigate a matter [that] it already has had an opportunity to litigate." (Internal quotation marks omitted.) *Wellswood Columbia, LLC* v. *Hebron*, 327 Conn. 53, 66, 171 A.3d 409 (2017). "[O]rdinarily the doctrine of res judicata operates to preclude the relitigation in one action of a claim or issue that has been determined in a previous, separate action," but the doctrine may also "operate within the same case." *CFM of Connecticut, Inc.* v. *Chowdhury*, 239 Conn. 375, 397, 685 A.2d 1108 (1996), overruled in part on other grounds by *State* v. *Salmon*, 250 Conn. 147, 735 A.2d 333 (1999); see, e.*g.*, *State* v. *Aillon*, 189 Conn. 416, 425–29, 456 A.2d 279 (double jeopardy claim was sufficiently similar to claim rejected in prior appeal for doctrine of res judicata to bar criminal defendant from subsequently raising it), cert. denied, 464 U.S. 837, 104 S. Ct. 124, 78 L. Ed. 2d 122 (1983).

In the present case, it cannot be disputed that the defendants already had the opportunity to litigate their claim that the plaintiff lacked standing to pursue foreclosure because it cannot enforce Note B under the UCC. That claim was squarely before the Appellate Court in the prior appeal. See *LPP Mortgage Ltd.* v. *Underwood Towers Ltd. Partnership*, supra, 205 Conn. App. 765, 768–69. The Appellate Court expressly considered and rejected that claim, including the city's argument that *Bedford Realty* had been overruled sub silentio by this court in subsequent decisions. See id., 768–72. Thus, the standing issue raised by the defendants was squarely presented and fully and finally resolved on its merits. Accordingly, under the doctrine of res judicata, the Appellate Court's

decision plainly precluded the defendants from reviving that same standing claim on remand to the trial court. See, e.g., *Wells Fargo Bank, N.A.* v. *Tarzia*, 186 Conn. App. 800, 810–13, 201 A.3d 511 (2019) (in foreclosure action, doctrine of res judicata applied to defendant's claim that plaintiff did not have standing because it had been squarely addressed by Appellate Court in parties' prior appeal).

The defendants claim that they are nonetheless entitled to further review because the law had changed since the Appellate Court decided the issue. Specifically, as an extension of the city's argument in its prior appeal, the defendants contend that *Bedford Realty*, on which the plaintiff's standing relies, was overruled sub silentio by this court's decision in *Tope*, which was issued after the Appellate Court released its decision in the present case. The defendants therefore argue that *Tope* constitutes an intervening change in the governing law such that they could again raise the issue of standing, particularly considering that the first judgment of strict foreclosure had already been opened at the plaintiff's request.

We agree with the defendants that an intervening change in the governing case law may prevent the application of res judicata. See, e.g., *Local 1219, International Assn. of Fire Fighters* v. *Connecticut Labor Relations Board*, 171 Conn. 342, 356, 370 A.2d 952 (1976) (principle that "a judicial declaration intervening between the two proceedings may so change the legal atmosphere as to render the rule of collateral estoppel inapplicable" extends "to the doctrine of res judicata" (internal quotation marks omitted)). But, as the defendants conceded at oral argument before this court, if *Tope* did not change the governing law, then the Appellate Court's prior decision had preclusive effect for the reasons previously set forth. To resolve the defendants' appeal, we must determine whether the trial court correctly concluded that *Bedford Realty* was not overruled sub silentio by this court in *Tope*.

We begin by examining our decision in *Bedford Realty*. In that case, the plaintiff had been assigned the mortgage and note, but the plaintiff never had physical possession of the original note, which had previously been lost. See *New England Savings Bank* v. *Bedford Realty Corp.*, supra, 238 Conn. 748, 759–60. For that reason, the defendant in *Bedford Realty*, like the defendants in the present case, argued that the plaintiff could not obtain a judgment of strict foreclosure because it could not satisfy the requirements of §§ 42a-3-301 and 42a-3-309 by proving that it had possession of the note at the time the note was lost. See id., 759.

This court rejected that argument. See id., 759–60. In doing so, we first recognized that "[a] note and a mortgage given to secure it are separate instruments, executed for different purposes," and a legal action to enforce the note and the equitable action of foreclosure "are regarded and treated, in practice, as separate and distinct causes of action" in this state. (Internal quotation marks omitted.) Id., 759. Because there was no dispute regarding the existence of the debt underlying the lost note, we reasoned that the plaintiff could enforce the terms of the mortgage via foreclosure, as long as there was secondary evidence of the debt. See id., 759–60. Accordingly, we concluded that §§ 42a-3-301 and 42a-3-309 did not apply to the equitable action of foreclosure, and, therefore, "the fact that [the plaintiff] never possessed the lost promissory note [was] not fatal to its foreclosure of the mortgage." Id. Overall, *Bedford Realty* made clear that a party need not be entitled to enforce a promissory note under the UCC to bring an action in equity to foreclose the mortgage securing the debt evidenced by such note.

Our decision in *Tope* involved a completely different scenario from that addressed in *Bedford Realty*. In *Tope*, the plaintiff had been assigned the mortgage, and, as set forth in an affidavit submitted to the trial court, the plaintiff was in possession of the original note secured by that mortgage. See *Bank of New York Mellon* v. *Tope*, supra, 345 Conn. 680–81. In rejecting the defendant's

challenge to the plaintiff's standing, the trial court concluded that the plaintiff was the "holder" of the note under the UCC, which provided it with standing to foreclose. Id., 681. On appeal, the defendant argued that the plaintiff did not have standing based on the evidence in the record because "the note [was] specially endorsed to 'JPMorgan Chase Bank, as Trustee,' and the [plaintiff had] not proven that it [had] the authority to enforce the note." Id., 676.

We agreed with the defendant that the trial court incorrectly concluded that the plaintiff had standing on the basis that it was entitled to enforce the note as its holder. See id., 681. Consistent with the statutory definition of a "holder" under the UCC as "[t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession";[11] General Statutes § 42a-1-201 (b) (21) (A);[12] we concluded that the plaintiff could not be the holder because the note was specially endorsed to a party other than the plaintiff. *Bank of New York Mellon* v. *Tope*, supra, 345 Conn. 678, 681.

Having concluded that the plaintiff was not the holder, we reasoned that the plaintiff could prove that it had

---

[11]General Statutes § 42a-3-205 provides in relevant part: "(a) If an endorsement is made by the holder of an instrument, whether payable to an identified person or payable to bearer, and the endorsement identifies a person to whom it makes the instrument payable, it is a 'special endorsement'. When specially endorsed, an instrument becomes payable to the identified person and may be negotiated only by the endorsement of that person. . . .

"(b) If an endorsement is made by the holder of an instrument and is not a special endorsement, it is a 'blank endorsement'. When endorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially endorsed. . . ." See *Bank of New York Mellon* v. *Tope*, supra, 345 Conn. 678–79; see also, e.g., *RMS Residential Properties, LLC* v. *Miller*, 303 Conn. 224, 231, 32 A.3d 307 (2011), overruled in part on other grounds by *J.E. Robert Co.* v. *Signature Properties, LLC*, 309 Conn. 307, 71 A.3d 492 (2013).

[12]Section 42a-1-201 (b) (21) was amended by No. 25-145, § 1, of the 2025 Public Acts (effective January 1, 2026), which made certain changes to the statute that are not relevant to this appeal. In the interest of simplicity, we refer to the current revision of the statute.

standing based on its possession of the original note only if it could establish that it was a nonholder in possession of the note with the rights of a holder. See id., 681. We explained that, to obtain that status under the UCC, "the plaintiff must prove that the transferor delivered the note to the plaintiff intending to vest in it the right to enforce the instrument," as set forth in General Statutes § 42a-3-203 (a) and (b). Id. Because the issue of whether the plaintiff had standing as a nonholder in possession of the note "turn[ed] on questions of fact, namely, whether the plaintiff [had] been vested with the right to enforce the note," we ordered that the case be remanded to the trial court with direction to conduct an evidentiary hearing for the purposes of making relevant factual findings and an ultimate determination regarding the plaintiff's standing. Id., 682–83.

Nothing in our decision in *Tope* was inconsistent with our decision in *Bedford Realty* or otherwise indicated that *Bedford Realty* was no longer controlling precedent. In *Tope*, we neither cited to *Bedford Realty* nor discussed the distinction between an action at law on the note and an action in equity to foreclose the mortgage. More fundamentally, the underlying facts in *Tope* did not even implicate the principles set forth in *Bedford Realty*. *Tope* was not a lost note case. To the contrary, the plaintiff in *Tope* had possession of the original note; the problem was that the note was specially endorsed to another entity. The plaintiff in *Tope* did not seek to establish its standing to pursue an action in equity to foreclose the mortgage via secondary evidence of its ownership of the debt. Accordingly, this court's holding in *Bedford Realty*—that a plaintiff need not be entitled to enforce a note under the UCC to pursue foreclosure— was irrelevant to our decision in *Tope*.

The defendants argue that this court overruled *Bedford Realty* because *Tope* focused solely on whether the plaintiff could enforce the note under the UCC. The defendants assert that the fact that this court did not mention that the plaintiff could have pursued an action

in equity to foreclose the mortgage meant that this court was overruling *Bedford Realty* sub silentio. We reject that argument because it overlooks the narrow question we addressed in *Tope*: whether the plaintiff could establish that it had standing to foreclose the mortgage based on the evidence in the record demonstrating its possession of the original note. See id., 680–81.

In answering that question in *Tope*, we focused on the relevant provisions of the UCC because evidence of its possession of the note was the sole evidence the plaintiff presented of its standing. See id., 678–81. We explained that a person entitled to enforce the note as its holder, which requires possession of the note, may foreclose the mortgage. Id., 678–80; see General Statutes § 42a-1-201 (b) (21); General Statutes § 42a-3-301 (i); see also, e.g., *RMS Residential Properties, LLC* v. *Miller*, 303 Conn. 224, 231–32, 32 A.3d 307 (2011) ("a holder of a note is presumed to be the owner of the debt, and unless the presumption is rebutted, may foreclose the mortgage"), overruled in part on other grounds by *J.E. Robert Co.* v. *Signature Properties, LLC*, 309 Conn. 307, 71 A.3d 492 (2013). In addition, we further explained that a nonholder in possession of the note with the rights of a holder may foreclose the mortgage. *Bank of New York Mellon* v. *Tope*, supra, 345 Conn. 678, 681; see General Statutes § 42a-3-301 (ii); see also, e.g., *J.E. Robert Co.* v. *Signature Properties, LLC*, supra, 327–28 ("a transferee entitled to enforce the note as a nonholder [in possession of the note] with the rights of [a] holder" may foreclose mortgage).

The defendants seize on our statement in *Tope* that "it is the holder of the note that has the right to foreclose on the property"; *Bank of New York Mellon* v. *Tope*, supra, 345 Conn. 680 n.7; as evidence that our decision intended to establish the proposition that a plaintiff's standing to foreclose is determined solely under the UCC. When read in context, however, that statement merely reflected our focus on whether the plaintiff had standing under the UCC as either the holder or a nonholder in possession of

the note with the rights of a holder, which was the issue presented for resolution. *Tope* did not announce any change in the law, and it most certainly did not overrule or otherwise alter our holding in *Bedford Realty*.

Because the defendants in the present case already had the opportunity to litigate the issue of the plaintiff's standing in the first appeal, and our decision in *Tope* did not subsequently change the law, we conclude that the doctrine of res judicata bars the defendants from relitigating the standing issue, which has been squarely presented and fully and finally resolved.[13] Accordingly, we conclude that the trial court properly denied the defendants' motions to dismiss.

In so concluding, we further reject the defendants' contention that, after the trial court opened the judgment of strict foreclosure on remand, there was no longer an existing final judgment, and the doctrine of res judicata was therefore inapplicable. "A judgment may be final in a res judicata sense as to a part of an action although litigation continues as to the rest." (Internal quotation marks omitted.) *CFM of Connecticut, Inc.* v. *Chowdhury*, supra, 239 Conn. 397; see also, e.g., 1 Restatement (Second), Judgments § 13, comment (e), p. 134 (1982).

The trial court opened the judgment of strict foreclosure for the limited purposes of setting new law days and considering an award of attorney's fees, and, thus, the judgment was not opened in its entirety. See, e.g., *Foisie* v. *Foisie*, 335 Conn. 525, 546, 239 A.3d 1198 (2020) (granting motion to open dissolution judgment for limited purpose of reconsidering financial orders would not open entire judgment and thereby reinstate parties' marriage). Rather, the judgment remained final in a res judicata sense as to the issue of standing, which had

---

[13]Because we conclude that the doctrine of res judicata applies, we need not consider whether the law of the case doctrine also precludes the defendants from litigating their claim that the plaintiff did not have standing. Furthermore, we do not reach the underlying merits of the defendants' appeal, including their contention that *Bedford Realty* was wrongly decided.

already been fully litigated and resolved on appeal. See, e.g., *Wahba* v. *JPMorgan Chase Bank, N.A.*, 349 Conn. 483, 493–500, 316 A.3d 338 (2024) ("when execution . . . has been stayed pending appeal . . . and the original law days have passed," judgment of strict foreclosure retains sufficient vitality to preclude modification, except in certain limited situations in which "relevant circumstances have changed during the course of the appeal," including when modification of form of judgment would prevent "a windfall to the mortgagee"). Therefore, consistent with "the need for an orderly foreclosure procedure that necessarily must, at some point, conclude"; (internal quotation marks omitted) *Deutsche Bank National Trust Co.* v. *Pardo*, 170 Conn. App. 642, 654, 155 A.3d 764, cert. denied, 325 Conn. 912, 159 A.3d 231 (2017); the fact that the trial court opened the judgment of strict foreclosure to reset the law days and to award attorney's fees was immaterial to the applicability of the doctrine of res judicata to the standing question in this case.

The judgment is affirmed[14] and the case is remanded for further proceedings according to law.[15]

In this opinion the other justices concurred.

--------

[14]At oral argument before this court, an error in the judgment was identified, in that the debt associated with Note A, in the approximate amount of $76 million, was incorporated into the debt when that indebtedness is subordinate to other priorities of record. Nothing in this court's remand order should be read to preclude the trial court from addressing and resolving that matter on remand when resetting law days.

[15]See *Wahba* v. *JPMorgan Chase Bank, N.A.*, supra, 349 Conn. 508 n.10.